UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIUS DE'MON LAKE, | No. 2:23-cv-1306 DJC AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS & RECOMMENDATIONS |
| A. OBOYLE, et al. | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendants' motion for summary judgment.[1] ECF No. 28.

I.     Procedural History

This case proceeds on plaintiff's second amended complaint. ECF No. 13. On screening, the court found that plaintiff had stated a cognizable deliberate indifference claim against defendants O'Boyle and Rutledge and dismissed plaintiff's retaliation claim without leave to amend. ECF No. 14, 22. In response to the complaint, defendants filed an answer (ECF No. 27) and an exhaustion-based motion for summary judgment (ECF No. 28). They also moved to stay

---

[1] Plaintiff has also filed a motion to reschedule the settlement conference. ECF No. 40. However, the motion was not docketed until July 30, 2025, and the record reflects that the settlement conference took place as scheduled on July 28, 2025, but was unsuccessful. ECF No. 38. The motion will therefore be denied as moot.

1

merits-based discovery pending resolution of the motion for summary judgment (ECF No. 30) and that motion was granted (ECF No. 31). Plaintiff has filed an opposition to the motion for summary judgment (ECF No. 32), to which defendants have replied (ECF No. 34).

II. Plaintiff's Allegations

The complaint alleges that on July 7, 2023, defendants O'Boyle and Rutledge were deliberately indifferent to plaintiff's medical needs. ECF No. 13 at 3. Specifically, plaintiff alleges that after he was assaulted by an officer, responding medical staff directed defendants to take him to the Treatment and Triage Area (TTA) for further treatment but defendants refused to take him there despite his visible injuries and ignored him when he said, "man down." Id.

III. Motion for Summary Judgment

A. Defendants' Arguments

Defendants argue that they are entitled to summary judgment because plaintiff failed to exhaust his claims before filing suit since he did not submit any grievances regarding an incident occurring on July 7, 2023, as alleged in the operative complaint. ECF No. 28-1 at 8-9. Defendants also assert that the grievances plaintiff filed regarding an incident that occurred on July 7, 2022, failed to properly exhaust his claims because they were not sufficient to put the institution on notice of his deliberate indifference claim and plaintiff failed to appeal one of the grievances to the Office of Appeals (OOA), which is the final level of the grievance process. Id. at 10-13. Finally, defendants argue that plaintiff was not excused from the exhaustion requirement. Id. at 13-14.

B. Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file a separate document in response to defendants' statement of undisputed facts that identifies which facts are admitted and which are disputed, as required by Local Rule 260(b).

////

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted).

Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

In his response, plaintiff alleges that when he filed the grievance he understood his claim was redirected by the Office of Grievances to an "outside agency." ECF No. 32. He believed his claim was sent to either the OOA or the Department of Justice and waited to hear back from the "outside agency" before filing this suit. Id. Plaintiff claims that he received an exhaustion notice from the "Hiring Authority" with no accompanying appeals paperwork, and he began this lawsuit with the understanding that his claim was completely exhausted. Id. He further asserts that he was confused about what his grievance being redirected meant. Id.

IV.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The

1 moving party may accomplish this by "citing to particular parts of materials in the record,
2 including depositions, documents, electronically stored information, affidavits or declarations,
3 stipulations (including those made for purposes of the motion only), admissions, interrogatory
4 answers, or other materials" or by showing that such materials "do not establish the absence or
5 presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
6 support the fact." Fed. R. Civ. P. 56(c)(1).

7 "Where the non-moving party bears the burden of proof at trial, the moving party need
8 only prove that there is an absence of evidence to support the non-moving party's case." Oracle
9 Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).
10 Indeed, summary judgment should be entered, "after adequate time for discovery and upon
11 motion, against a party who fails to make a showing sufficient to establish the existence of an
12 element essential to that party's case, and on which that party will bear the burden of proof at
13 trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element
14 of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such
15 a circumstance, summary judgment should "be granted so long as whatever is before the district
16 court demonstrates that the standard for the entry of summary judgment, as set forth in Rule
17 56(c), is satisfied." Id.

18 If the moving party meets its initial responsibility, the burden then shifts to the opposing
19 party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.
20 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the
21 existence of this factual dispute, the opposing party may not rely upon the allegations or denials
22 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
23 admissible discovery material, in support of its contention that the dispute exists. See Fed. R.
24 Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a
25 fact "that might affect the outcome of the suit under the governing law," and that the dispute is
26 genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving
27 party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
28 ////

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment. ECF No. 28-5; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V.   Applicable Legal Standards

    A.   Legal Standard for Exhaustion

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 578 U.S. 632, 638 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204, 216 (2007). "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 578 U.S. at 639. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

As long as some potential remedy remained available through the administrative appeals process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies.

6

Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168.

    B.  California Regulations Governing Exhaustion of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process is set forth in the California Code of Regulations. At the time relevant to this complaint, the regulations allowed prisoners "to dispute a policy, decision, action, condition, or omission by the department or departmental staff." Cal. Code Regs. tit. 15, § 3481(a) (2022). The process was comprised of two levels of review for most types of grievances. Id. When submitting an initial grievance, a prisoner was required to "describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge." Id. § 3482(c)(2). A response at the first level of the review process that resulted in a decision of "granted" did not constitute exhaustion of all administrative remedies. Id. § 3483(l)(1). A grievance could be exhausted at the first level if the decision issued

was "identified as staff misconduct," "pending legal matter," or "time expired," otherwise, review by the Office of Appeals exhausted all administrative remedies. Id. §§ 3483(l)(2), 3486(m). To appeal a grievance, an inmate was required to "describe in detail why the decision provided by the Institutional or Regional Office of Grievances [was] inadequate." Id. § 3484(c)(2).

### VI.  Undisputed Material Facts

Plaintiff did not separately and individually respond to Defendants' Statement of Undisputed Facts (DSUF), and the facts are deemed undisputed except as otherwise discussed. Additional facts have been taken from plaintiff's grievances where appropriate.

Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) and was housed at Mule Creek State Prison (MCSP) at all times relevant to the complaint. DSUF (ECF No. 28-2) ¶ 1; ECF No. 13 at 1, 3. He alleges that after he was assaulted, defendants O'Boyle and Rutledge ignored medical staff's recommendation to take him to the TTA and refused to escort him there because plaintiff had been charged with battering another officer. ECF No. 13 at 3. The operative complaint alleges that the incident took place on July 7, 2023. Id.

Plaintiff submitted two grievances to MCSP's Office of Grievances (OOG) regarding a July 7, 2022 incident, but none regarding a July 7, 2023 incident. DSUF ¶ 12. On July 8, 2022, the MCSP OOG received plaintiff's grievance No. 277152 (Grievance #1) alleging that on July 7, 2022, an officer subjected him to excessive force.[2] ECF No. 28-4 at 16. Grievance #1 also stated, "I was also denied opportunity to go to T.T.A. as I was released to custody who refused to take me by P.T. Arteaga disposition." Id. On July 16, 2022, plaintiff received a response from the OOG which indicated the grievance was categorized as "use of force," referred the allegations outside the grievance process, and stated that it exhausted his administrative remedies for this claim. Id. at 21. On December 22, 2022, the allegation of excessive use of force was deemed unfounded. Id. at 20.

////

---

[2] The use of force allegation was separately litigated in related case Lake v. Covello, No. 2:23-cv-1311 DJC AC (E.D. Cal.).

8

1   On July 11, 2022, MCSP received grievance No. 277737 (Grievance #2) in which plaintiff alleged:

> On 7-7-22 I was not escorted to T.T.A which was requested/determined on 7-7-22 by RN. She released me to custody who refused to escort me there. They made me drag my feet to the program office instead. The complaint occurred on A-yard. I tried to resolve the complaint by letting the officers escort [sic] me know the disposition was to escort me to T.T.A. Instead they made me walk to ad-seg on C-yard and said someone else will take you. I would like for this complaint to be investigated on why I was not properly handled and documented.

ECF No. 28-4 at 25. The OOG issued a decision on August 18, 2022, that reflected plaintiff was claiming he was escorted to administrative segregation instead of the TTA and that he requested "the mistake be investigated, as to why this situation was not handled properly." Id. at 23. The OOG found that the claim was substantiated, and it was determined that "there was a miscommunication between medical and custody staff." Id. Custody staff were instructed to read the forms in their entirety and medical staff was informed to verbally communicate when an inmate needed to be escorted to the TTA. Id. The grievance was granted and informed plaintiff that if he was dissatisfied with the response he could appeal the decision to the OOA. Id. at 24. Plaintiff did not appeal. DSUF ¶ 14.

VII.   Discussion

It is undisputed that both of plaintiff's grievances alleged the incident occurred on July 7, 2022, while the operative complaint alleges the incident occurred on July 7, 2023. Defendants argue that plaintiff has not exhausted his administrative remedies because he has not filed any grievances related to an incident occurring on July 7, 2023, and that while he may have alleged in the first amended complaint that the incident occurred on July 7, 2022, that complaint has been superseded and no longer serves any function. ECF No. 28-1 at 8-9. Although plaintiff does not address the date discrepancy, the court will assume that the incident occurred on July 7, 2022, for purposes of analyzing exhaustion.[3]

---

[3] Based on the incident report attached to the original complaint (ECF No. 1 at 7) and the allegations of the first amended complaint (ECF No. 4 at 3), it is clear that the 2023 date was a typographical error. The undersigned would not recommend dismissal of this action based on this discrepancy without first affording plaintiff the opportunity to amend.

It is undisputed that plaintiff submitted only two grievances relevant to the claim at issue: Grievance #1, which the parties agree is exhausted, and Grievance #2, which was undisputedly not appealed. Instead, the parties dispute whether Grievance #1 encompassed the deliberate indifference claim and therefore exhausted that claim before plaintiff filed the complaint. Additionally, while the parties do not dispute that plaintiff failed to appeal Grievance #2, it is arguable that the grievance exhausted the administrative remedies process because it was fully granted. Defendants also argue that Grievance #2 failed to properly notify the prison of the claim against it.

In response to defendants' argument that Grievance #1 did not exhaust his deliberate indifference claim, plaintiff argues that his grievance was exhausted once it was redirected to an outside agency and he was confused about what to do when the response was redirected. ECF No. 32. However, defendants do not argue that Grievance #1 was unexhausted. Rather, they argue that the grievance did not exhaust the deliberate indifference claim at issue because it did not put the prison on notice of defendants' unconstitutional conduct. ECF No. 28-1 at 9-10. To that end, plaintiff argues that he did not include defendants' names because he did not know them and that he "made it loud and clear their inconvenience to my medical and disable needs as an E.O.P. inmate." ECF No. 32 at 1.

Assuming that the date of the incident was sufficient to allow the prison to identify defendants as the officers who refused to take plaintiff to the TTA, Grievance #1 was not sufficient to put the prison on notice that he was complaining of and seeking relief related to defendants' conduct. "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010). Grievance #1 focused almost exclusively on the alleged use a force by an officer and included only one sentence stating that plaintiff had been released to custody staff who denied him the opportunity to go to TTA. ECF No. 28-4 at 18. Moreover, plaintiff did not allege any injuries that needed to be treated at the TTA and only sought relief related to the officer who assaulted him and the RVR he received. Id. It was therefore not apparent from Grievance #1 that he was seeking redress as to the failure to take him to the TTA.

       Additional evidence submitted by defendants, and not disputed by plaintiff, also clearly demonstrates that the prison did not understand the grievance to be seeking action related to defendants' conduct and that plaintiff himself did not intend the grievance to address defendants' conduct. The July 16, 2022, OOG response referring the grievance to an outside agency classified the claims in Grievance #1 as allegations of staff misconduct under the sub-category "use of force." ECF No. 28-4 at 21. This designation made clear that Grievance #1 solely addressed the use of force allegations. The December 22, 2022, memorandum advising plaintiff of the outcome further clarified the issue by listing the allegations in Grievance #1 as: "Claimant alleges Correctional staff verbally threatened and used excessive force by punching and placing the claimant in a choke hold." Id. at 20. Finally, despite plaintiff's conclusory assertion that he made his claims clear, it is apparent that he did not intend Grievance #1 to address the deliberate indifference claim because he filed Grievance #2—which explicitly addresses the failure to take him to the TTA—three days later and prior to receiving any response classifying Grievance #1 as a use of force claim only. For these reasons, the undersigned finds that the deliberate indifference claim against defendants was not exhausted by Grievance #1 because it did not put the prison on notice of the claims at issue in this case.

       With respect to Grievance #2, defendants assert that the grievance was not exhausted because plaintiff failed to appeal the first-level decision and he was not excused from doing so. ECF No. 28-1 at 11-13. They also argue that the grievance did not adequately place the prison on notice of the deliberate indifference claim because of the failure to name either defendant or attribute any malicious actions or statements to them.[4] Id. at 10-11. In his opposition, plaintiff states that he did not write the names of the officers because he did not know their names until he received the RVR, but he does not appear to address the other arguments. ECF No. 32.

       Although plaintiff did not appeal Grievance #2 after the first-level decision, the court must consider whether he was required to do so to exhaust the grievance. In Harvey v. Jordan,

---

[4] Defendants also argue the grievance was insufficient to exhaust plaintiff's claim because of the date discrepancy. ECF No. 28-1 at 11. This argument has been rejected for reasons explained above.

11

the Ninth Circuit held that "[a]n inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." 605 F.3d 681, 685 (9th Cir. 2010). Defendants attempt to argue that Harvey does not excuse plaintiff's failure to appeal his grievance because the Ninth Circuit has clarified that Harvey "applied to the unique circumstance in which an inmate was induced into abandoning his grievance by an unfulfilled promise of relief." ECF No. 28-1 at 12 (citing Benitez v. County of Maricopa, 667 F. App'x 211 (9th Cir. 2016)). They also attempt to analogize the circumstances of this case to Nicholson v. Sando, No. 19-cv-07791 EJD PR, 2021 WL 879845, 2021 U.S. Dist. LEXIS 44176 (N.D. Cal Mar. 8, 2021), asserting that the court in Nicholson found the plaintiff was required to exhaust his claims to the highest level of administrative review despite obtaining his requested remedy at the institutional level. ECF No. 28-1 at 12.

The undersigned finds both Benitez, which "clarified" Harvey, and Nicholson to be distinguishable. Both cases, like Harvey, dealt with appeals that were only partially granted, indicating a potential for additional relief that the plaintiffs could have pursued through an appeal. Moreover, in Nicholson, the investigation determined that prison policy had *not* been violated and the response explicitly advised the plaintiff that further relief could be available and that he was required to appeal to the third level of review in order to exhaust the appeals process. 2021 WL 879845, at*1-2, 2021 U.S. Dist. LEXIS 44176, at *3-4. In the present case, the OOG investigated Grievance #2 and determined that there was a miscommunication between medical and custody staff which the prison acted to remedy, thereby fully granting plaintiff's requested relief for his "complaint to be investigated on why [he] was not properly handled and documented." ECF No. 28-4 at 23-25.

Moreover, unlike in Nicholson, the response to Grievance #2 did not advise plaintiff that he was required to appeal the decision in order to exhaust his administrative remedies and instead said that the decision could be appealed "[i]f you are dissatisfied with this response." ECF No. 28-4 at 23-24. Similarly, while the regulations at the time provided that a decision of "granted" did not exhaust administrative remedies, they also stated that an appeal had to "describe in detail why the decision provided by the Institutional or Regional Office of Grievances [was]

1  inadequate." Cal. Code Regs. tit. 15, §§ 3483(l)(1), 3484(c)(2).  It is unclear how an inmate
2  would be able to appeal a fully granted grievance without violating the regulations if they felt the
3  response was adequate.
4      In this case, the grievance paperwork itself gives no indication whether plaintiff was fully
5  satisfied by the decision he received.  ECF No. 28-4 at 23-32.  However, it appears from his
6  opposition that he was not actually satisfied by the response because he asserts that "defendants
7  claim my own actions is why I was not taken to the T.T.A. by these two officers, but I did nothing
8  to officers Rutledge and Oboyle as the record shows." ECF No. 32 at 2.  This indicates that
9  plaintiff was not satisfied with the response that the failure to take him to the TTA was due to a
10 miscommunication and that he was therefore required to appeal the decision in order to exhaust
11 his remedies.
12     Even if plaintiff was fully satisfied by the OOG's decision and therefore not required to
13 appeal, Grievance #2 needed to sufficiently place the prison on notice of the deliberate
14 indifference claim in order to exhaust his administrative remedies for this case.  Defendants assert
15 that plaintiff failed to place the prison on notice by failing to include names or descriptions of the
16 officers involved in Grievance #2.  ECF No. 28-1 at 11.  However, when prison officials address
17 a grievance without rejecting it on procedural grounds, the prison waives those procedural
18 defects, Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016), and the procedural requirements for
19 filing grievances does not require a prisoner to name officers if he does not know them, see Cal.
20 Code Regs. tit. 15, § 3482(c)(2) (directing prisoners to "describe all information known and
21 available to the claimant").  Here, plaintiff described defendants by identifying them as the
22 officers who escorted him to administrative segregation on July 7, 2022 (ECF No. 28-4 at 25),
23 and the response to the grievance reflects that the reviewer spoke to the officers involved in the
24 incident (ECF No. 28-4 at 23), demonstrating that the prison was clearly able to identify the
25 officers based on the information provided in the grievance.  Because the grievance was not
26 rejected for failure to properly identify the officers, the claim of procedural defect due to failure
27 to name the officers is without merit.
28 ////

On the other hand, defendants are correct that plaintiff failed to place the prison on notice of the problem that needed remedying when he failed to identify specific actions that would indicate defendants were deliberately indifferent to his medical needs. Specifically, plaintiff did not include any facts like those included in the complaint indicating he had injuries requiring immediate attention at the TTA, that defendants did not escort him because he assaulted another officer, or that they ignored him when he said "man down." See ECF No. 13 at 3. Instead, Grievance #2 merely stated that defendants did not take plaintiff to the TTA and told him someone else would take him. ECF No. 28-4 at 25. This description, as the August 18, 2022, OOG decision demonstrates, suggests that incident involved only a miscommunication between prison staff and not an allegation by plaintiff that defendants were deliberately indifferent to his medical needs. Nothing in the grievance suggests that defendants maliciously ignored plaintiff's needs or that any remedy beyond ensuring better communication between custody and medical staff was necessary. Consequently, Grievance #2 did not properly place the prison on notice of plaintiff's allegations raised in his complaint and was therefore not sufficient to exhaust plaintiff's claims. See Griffin v. Arpaio, 557 F.3d 1117, 1121 (9th Cir. 2009) (inmate was not required to allege deliberate indifference but failed to exhaust because "[h]is grievance did not 'provide enough information . . . to allow prison officials to take appropriate responsive measures.'" (alteration in original) (quoting Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004))).

VIII. Conclusion

As set forth above, plaintiff failed to exhaust his administrative remedies as to the deliberate indifferent claim against defendants O'Boyle and Rutledge, and defendants' motion for summary judgment should be granted.

IX. Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendants' motion for summary judgment be granted because you did not exhaust your administrative remedies for your deliberate indifference claim before filing the complaint. Grievance #1 did not exhaust your claim because it was about the use of force and did not include information that put the prison on notice of a medical deliberate indifference claim. Grievance #2 did not exhaust your administrative remedies because even

14

though it said you were not taken to TTA, it did not say that you had a serious medical need and that the escorting officers deliberately refused to take you to TTA for treatment. When Grievance #2 was resolved in a way that treated it as just a miscommunication problem, you did not appeal to explain that the real problem was deliberate denial of medical care.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED plaintiff's motion to reschedule the settlement conference (ECF No. 40) is DENIED.

IT IS FURTHER RECOMMENDED that:

1. Defendants O'Boyle and Rutledge's motion for summary judgment (ECF No. 28) be GRANTED;

2. The second amended complaint be DISMISSED without prejudice for failure to exhaust administrative remedies; and

3. Judgment be entered for defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 20, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE